**BLISS et al. v. BLISS.**

**No. 6099.**

Court of Appeals of the District of Columbia.

Argued April 3, 1934.

Decided April 23, 1934.

William C. Sullivan, of Washington, D. C., for appellants.

G. Percy McGlue, Thomas F. Burke, H. Winship Wheatley, and H. Winship Wheatley, Jr., all of Washington, D. C., for appellee.

G. Thomas Dunlop, of Washington, D. C., for G. Thomas Dunlop and Alonzo O. Bliss, Jr., trustees, Equity No. 35,245.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellants are the trustees of Alonzo O. Bliss Properties. Appellee is the committee of the estate of Eva Jackson Bliss. The controversy involves the single question whether appellants or appellee is entitled to the interest on $40,000 of bonds, and grows out of a petition for instructions filed in old equity cause No. 35,245 by appellants as trustees. After a hearing at which all parties in interest were represented, the trial judge made findings of fact and announced his conclusions of law, and, based on these findings and conclusions, entered a decree directing appellants, as trustees of Bliss Properties, to pay the interest on the $40,000 of bonds to appellee, as committee of the person and estate of Eva Jackson Bliss. From this decree this appeal was taken.

Epitomized, the facts are as follows: Alonzo O. Bliss, Sr., was twice married. His second wife was Eva Jackson Bliss. Their marriage was in 1904. In 1905 Alonzo O. Bliss, Jr., was born, and his mother shortly thereafter began to manifest symptoms of mental weakness. She is now and has been for many years *non compos mentis* and incapable of managing herself or her property. In 1911 Bliss conveyed to trustees of Bliss Properties certain valuable real estate located in Washington, and the trustees of this trust issued to him $2,000,000 of trust bonds bearing interest at the rate of 4 per centum per annum. Bliss, Sr., gave $425,000 of bonds to one of the sons by his first wife, $200,000 to another son by his first wife, $300,000 to one of the daughters by his first wife, $250,000 to the other daughter by his first wife, and put $400,000 in trust for Alonzo O. Bliss, Jr., the son of his second marriage. He gave $50,000 to his wife, Eva Jackson Bliss. In 1916 Mrs. Bliss was placed in the care of her sister, but later she became and now is an inmate of a sanatorium in Maryland. In 1918, and while in the custody of her sister, she brought suit through her next friend against her husband and the trustees of Bliss Properties, the object of which was to recover certain bonds and other property which it was

claimed she had delivered to him when she was incapable of knowing the nature of her act and also for the purpose of having reinstated certain inchoate dower rights in the property of her husband but which unwittingly she had conveyed with her husband to Bliss Properties. This suit resulted in an agreed decree entered March 10, 1921 (equity cause No. 35,245), the seventh clause of which, after naming certain trustees of Mrs. Bliss, provided as follows: "The said trustees shall during the lifetime of Eva Jackson Bliss collect and receive the sums hereinbefore provided [$10,000 annually] to be paid for her benefit, *and any other property or moneys* to which she may be entitled, and shall dispose of the same under the direction of the court for the sole use and benefit, support, maintenance and care of said Eva Jackson Bliss." The $10,000 annual payment provided to be paid to trustees for the benefit of Mrs. Bliss was secured by a trust deed on certain properties formerly belonging to Bliss, Sr., and $50,000 of bonds of the Bliss Properties, being the $50,000 in bonds he had given his wife. The decree provided that, on the death of Mrs. Bliss, the property securing the annual payment should be conveyed or released to the trustees of Bliss Properties.

In 1927 Bliss, Sr., died intestate, and, some question apparently having arisen as to whether he was then a resident of Maryland or of the District of Columbia or of Florida, and his estate (other than the estate conveyed to the Bliss Properties Trust) being somewhat involved, his heirs at law, desiring to wind up the estate without delay and to avoid litigation, in 1928 entered into a settlement contract. Alonzo O. Bliss, Jr., as committee, was a party to this contract, and in that behalf agreed to receive and accept for his mother in lieu of dower $40,000 par value of the bonds of the Bliss Properties. The contract recites that in order to compromise and fix definitely the respective rights and interests of the parties "and likewise any and all conflicting claims and differences of interpretation of that certain decree in equity cause numbered 35,245 of the Supreme Court of the District of Columbia, under which the said G. Thomas Dunlop and Alonzo O. Bliss, Jr., are trustees [the annual $10,000 trust for Mrs. Bliss], concerning eventual disposition of property held by them under said trust," etc., the party of the third part (Alonzo O. Bliss, Jr., committee) "does hereby agree and consent to receive and accept as committee for Eva Jackson Bliss, widow of Alonzo O. Bliss, Sr., and for and in her behalf as her full and complete distributive share and interest without restriction or reservation in kind in the estate of Alonzo O. Bliss, Sr., $40,000 par value bonds of the Bliss Properties of Washington *divested of such rights, if any, as the parties of the fifth part* [trustees of the Bliss Properties] *may have thereto under the aforesaid equity decree in cause numbered 35,245.*"

The effect of this agreement was to settle and extinguish the dower rights of Mrs. Bliss in the estate of her deceased husband. The agreement was carried out by the delivery of the $40,000 of bonds to Alonzo O. Bliss, Jr., as committee. But the trustees of Bliss Properties (appellants), being in doubt to whom to pay interest on the bonds, filed the petition first referred to, asking the court to instruct them in that respect. Appellee, as committee of the estate of his mother, insists that the interest is payable to him. Appellants insist it is payable to the trustees of Mrs. Bliss appointed under the 1921 decree. The basis for this contention is that, under the seventh paragraph of the 1921 decree and particularly that portion which provides that the trustees for Mrs. Bliss shall collect the annual $10,000 "and any other property or moneys to which she may be entitled," the interest on the bonds, not being specifically mentioned in the agreement of 1928, passes to the trustees. It is a concession in the case that the annual $10,000 provided for Mrs. Bliss is more than ample for all her purposes. If, therefore, the interest on the $40,000 acquired under the agreement of 1928 is payable to the trustees rather than to appellee as committee, it will either reduce the annual payment or accumulate and under the terms of the decree ultimately revert to appellants as trustees of Bliss Properties. In either case it would enhance the trust estate in their hands for the ultimate benefit of the heirs at law of Bliss, Sr.

The trial judge sustained the position of appellee, and held that the language of the decree which we have italicized above did not and was not intended to include property thereafter acquired by Mrs. Bliss. He was of opinion that there was ample consideration in the subsequent relinquishment of her dower in her husband's estate for the allotment of bonds made to her, and further held that the language of the agreement that the bonds were to be delivered and received "divested of such rights, if any," that the trustees might have thereto under the decree of March 10, 1921, expressed a clear intention to disassociate the settlement agreement from the decree of 1921, and we are of opinion that his conclusions are correct.

From what has been already said, it appears that the 1921 decree resulted from an agreement made by all of the parties concerned in the property which Alonzo O. Bliss, Sr., had transferred to the trust known as Alonzo O. Bliss Properties. The value of these transfers was then estimated to be in the neighborhood of $2,000,000. The deeds to the various parcels of real estate comprising the trust had been joined in by Mrs. Bliss at a time when it was at least doubtful whether she was capable of making a deed, and it was for the purpose of asserting her rights that equity suit No. 35,245 was begun. The beneficiaries of the trust, who were the children by the first marriage, as well as Alonzo O. Bliss, Jr., the child of the second, all had a substantial interest in settling this question, and the settlement, reflected in the decree, while it provided amply for Mrs. Bliss during her lifetime, was in substance no more than the recognition of the obligation then existing on her husband to maintain her during her life properly and according to his and her estate in life. The $10,000 annuity or allowance, whichever it may be called, was to be used by the trustees for her care and maintenance only to the extent necessary; the surplus, that is to say, the amount which was not used each year, was to revert to the trust. It is, therefore, altogether unthinkable that the language used in paragraph 7, whereby her trustees were directed to collect and receive "the sums hereinbefore provided to be paid for her benefit, *and any other property or moneys* to which she may be entitled" had any reference to any other property or money than those which she then was entitled to under the claims she then asserted. In the latter, made through her next friend, she demanded the reinstatement of her former interest in sundry properties, some of which had been conveyed to appellants and some of which were still in her husband's hands. By the agreement which was made, trustees were appointed for her, to whom was to be paid an annual sum of $10,000 for her maintenance, and this payment was in consideration of the surrender of all of her then existing rights. In these circumstances, it was entirely natural and proper that in the preparation of the decree the language just above italicized should have been included. The further provision of the decree, that at the termination of the trust the trustees appointed for her should pay over any moneys or properties in their hands to Properties Trust or to the persons beneficially entitled under it, clearly excludes the implication that the decree was intended to cover property Mrs. Bliss might subsequently acquire, and

in addition to this there is at least serious doubt if the decree of the court on the then state of the pleadings could have covered such after acquired property. But any doubt, if doubt there is, as to the correctness of this conclusion is entirely removed by paragraph one of the agreement of February, 1928. This agreement, made on Mrs. Bliss' behalf. by her committee, was of date some seven or eight years after the decree itself. In the meantime her husband had died, having acquired between the creation of the trust and his death other and additional properties considerably in excess of $100,000 in value. Whether under the law of Florida, or the District of Columbia, or Maryland, Mrs. Bliss had admittedly dower rights in this estate. If it was established her husband resided in Florida, where most of the property was located, her dower would have been one half his personal estate. It was this consideration and the desirability of settling the estate up as rapidly as possible that induced the 1928 agreement. By its terms she accepted, as her full and complete distributive share and interest in the estate, $40,000 par value of bonds divested of the rights the trustees of Bliss Properties might have under the aforesaid equity decree in cause No. 35,245.

The obvious intent of the agreement, in the use of the language just above recalled, was to transfer the bonds to the committee of Mrs. Bliss free of any claim either on the part of her own trustees or the trustees of Bliss Properties. Appellants indeed admit this, but tell us that the interest to accrue on the bonds is in another category and comes under the provisions of the 1921 decree. But we can find neither words nor intention to support this position. It being conceded that the bonds are not subject to the provisions of the 1921 decree, it is, we think, entirely out of the question to say that the interest is to be treated differently. The bonds themselves bear interest at 4 per cent., and this interest is merely an incident of the debt represented by the bonds. After its accrual it becomes a part of the debt itself. That which is to accrue is accessory or incident to the principal. It bears the same relation to the debt that rent does to land, and, as has been often said, when the debt is transferred, the interest follows it as the shadow does the substance.

Appellants' assignments of error include objections and exceptions to the admission of certain evidence heard by the court below, but as the court expressly stated the decision arrived at was without consideration of the

evidence, and as we have confined our discussion of the subject to an interpretation of the contract, it follows that the objections on this ground are without point; and on the whole case we are clearly of opinion the court below was right and that the decree entered below should be and is affirmed.

Affirmed.